## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JOANNE ODOM** and                      Case No.
**REGINALD WHITLOW**,                Hon.

         Plaintiffs,

v

**UNIVERSITY OF MICHIGAN**,
**UNIVERSITY OF MICHIGAN HEALTH SYSTEM**,
and **RUSS LAURIN**, in his individual and official capacity,

         Defendants.

---

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P58657)
Adam M. Taub (P78334)
*Attorneys for Plaintiff*
600 W. Lafayette Blvd., 4th Fl.
Detroit, MI 48226-0840
(313) 964-4454
richardmack@millercohen.com
adamtaub@millercohen.com

---

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in United States District Court for the Eastern District of Michigan, where it was given docket number 14-14652 and was assigned to Judge Linda V. Parker. After the action was dismissed without prejudice, Plaintiffs filed claims arising out of the transaction or occurrence in Washtenaw County Circuit Court, where it was given docket number 15-1045-CD and assigned to David S. Swartz. That action is no longer pending.

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

**NOW COME** Plaintiffs, **JOANNE ODOM** and **REGINALD WHITLOW**, by and through their attorneys, **MILLER COHEN, P.L.C.**, and for their Complaint against Defendants, **UNIVERSITY OF MICHIGAN**, **UNIVERSITY OF MICHIGAN HEALTH SYSTEM**, and **RUSS LAURIN**, in his individual and official capacity, states as follows:

### INTRODUCTION

Plaintiffs, JoAnne Odom and Reggie Whitlow, bring this suit seeking remedy for being denied Due Process under the 14th Amendment at their post-termination hearings and for being terminated because of their age in violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2202.

Ms. Odom, who is currently fifty-eight (58) years old, began working as a Patient Transportation Supervisor on or about August 9, 2005 with the University of Michigan Health System. During the course of her employment, including the day before her termination, Ms. Odom received excellent performance evaluations, including for her attendance. Throughout the course of her employment, Ms. Odom was constantly asked when she planned to retire. Ms. Odom did not plan to retire. In fact, Ms. Odom planned to work full-time at the University of Michigan after retiring from her second job at the Michigan Department of Corrections. Instead, the University of Michigan terminated Ms. Odom's employment on or

about July 29, 2013 and put Ms. Odom on a no-rehire list that would prevent Ms. Odom from obtaining employment with any member of the University of Michigan Health System.

The University claims Ms. Odom committed timesheet fraud by billing for hours she was not working. Such an allegation has no basis in fact. Ms. Odom became the subject of an investigation because of her age as an excuse to terminate her employment. The investigation allegedly used surveillance images and card swipes to determine Ms. Odom had been absent up to six and a half hours per day. Such conclusions were untrue and entirely unfounded. When Ms. Odom objected to the investigation's findings and explained her whereabouts for the time she was allegedly not working, the University refused to listen and upheld her termination. The University did not provide a neutral decision-maker at her post-termination hearing.

Mr. Whitlow, who is currently sixty-three (63) years old, began working for the University of Michigan Health System as a Multifunctional Material Management Intermediate Supervisor on or about January 15, 2008. Similarly to Ms. Odom, Mr. Whitlow was the target of an investigation into timesheet fraud because of his age that led to his termination on or about July 30, 2013. Just as with Ms. Odom, the University refused to listen to Mr. Whitlow's explanations of his whereabouts. And like Ms. Odom, the University did not provide Mr. Whitlow

a neutral decision-maker at his post-termination hearing. Additionally, he received a positive performance evaluation that said nothing about his attendance two days prior to his termination. The University replaced both Ms. Odom and Mr. Whitlow with younger workers.

Ms. Odom and Mr. Whitlow now sue under 42 U.S.C. § 1983 for Defendants' violation of their Due Process right to a neutral decision-maker at a post-termination hearing under the 14th Amendment and the ELCRA for age discrimination. They were made the targets of an unfounded investigation because of their age and then terminated when this self-serving investigation determined that Ms. Odom and Mr. Whitlow were absent from work. As the facts show Ms. Odom and Mr. Whitlow did not have any attendance issues and were instead fired because of their age, they seek all available remedies under the Act.

## PARTIES

1.     JoAnne Odom is an individual residing in Washtenaw County, Michigan.

2.     Reginald Whitlow is an individual residing in Washtenaw County, Michigan.

3.     The University of Michigan is a state constitutional body corporate and a public university and has a principal location in Washtenaw County, Michigan.

3

4.      The University of Michigan Health System is owned and operated by the University of Michigan and has a principal location in Washtenaw County, Michigan.

5.      Upon information and belief, Russ Laurin was the Director of Labor Relations for the University of Michigan Health System during all times relevant to the facts of this situation. The claims against Mr. Laurin are in both the individual and official capacities, as he was the lead supervisory person responsible for violation of Plaintiffs' Due Process rights during their post-termination hearings. Mr. Laurin is not immune from such claims because Mr. Laurin violated Plaintiffs' clearly expressed and established constitutional rights.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over Plaintiffs' claims arising under the Civil Rights Act, 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331.

7.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims.

8.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

9.      Ms. Odom began working as a Patient Transportation Supervisor on or about August 9, 2005 with the University of Michigan Health System.

10.     Ms. Odom is fifty-eight (58) years old and was born on December 9, 1956.

11.     Ms. Odom was scheduled to and did work twenty and one-half hours (20.5) per week on weekend and holiday shifts. She was compensated for working twenty (20) hours per week.

12.     Mr. Whitlow began working for the University of Michigan Health System as a Multifunctional Material Management Intermediate Supervisor on or about January 15, 2008.

13.     Mr. Whitlow is sixty-three (63) years old and was born on October 26, 1951.

14.     Mr. Whitlow was scheduled to and did work thirty (30) hours per week on the weekend and holiday shifts. He was compensated for working twenty-eight (28) hours per week.

15.     At all relevant times herein, the University of Michigan was the employer of Ms. Odom and Mr. Whitlow as both worked in the University of Michigan Health System.

16.     Ms. Odom and Mr. Whitlow both shared the same supervisor, LaKita Pogue.

17.     Although it was rare for Ms. Odom or Mr. Whitlow to interact with Ms. Pogue face-to-face, Ms. Pogue would occasionally hold staff meetings at

which Ms. Odom and Mr. Whitlow were present among the other supervisors. At these meetings, Ms. Pogue would question Ms. Odom when she planned on retiring, why she still wanted to work at her age, and even asked Ms. Odom how old she was. Ms. Pogue would make these comments in front of all present at the meetings.

18.     In or about May 2013, Ms. Odom was told by another Patient Transportation Supervisor, that Ms. Pogue had told him she planned on terminating Ms. Odom and Mr. Whitlow because she was looking to put a younger person in their positions.

19.     On or about July 28, 2013, Ms. Odom and Mr. Whitlow each received performance reviews signed by Ms. Pogue. Each received a "Solid Performance" rating. Neither review mentioned any issues with attendance.

20.     During his performance review, Ms. Pogue asked Mr. Whitlow when he planned to retire.  She also informed Mr. Whitlow that her mother was Mr. Whitlow's age when she retired.

21.     On or about July 30, 2013, Ms. Odom and Mr. Whitlow learned there had been an investigation conducted into whether Plaintiffs had committed time sheet fraud by falsely reporting hours worked.

22.     The result of this investigation was that the University determined Ms. Odom and Mr. Whitlow were not working for numerous hours they had reported on their time sheets.

23.     The University claims to have used surveillance images, card swipe readers, and parking permits to reach its conclusions.

24.     Ms. Odom does not have a parking permit from the University.

25.     Many of the card swipe readers at the University of Michigan Hospital where both Plaintiffs worked were broken during the period in question.

26.     Plaintiffs took different routes to traverse the hospital, so they do not necessarily enter and exit the same doors.

27.     Plaintiffs explained each of these defects to the University to no avail.

28.     The University terminated Ms. Odom on or about July 29, 2013 and Mr. Whitlow on or about July 30, 2013 because of their age.

29.     The University replaced Ms. Odom and Mr. Whitlow with younger employees.

30.     Despite explaining that they were actually working during the times in question and the defects in the investigation, the University declined to rescind Ms. Odom or Mr. Whitlow's terminations and instead placed them on a no-rehire list to prevent their future employment with *any* University of Michigan entity, the largest employer in Washtenaw County.

31.     Defendants have a policy of treating employees fairly and equitably. It is a manager's responsibility to determine key competencies and be consistent. Managers are to only suspend, discipline, and discharge employees as needed. Managers must follow policies and let employees know where they stand on a timely basis.

32.     It is Defendants' policy to utilize progressive discipline.

33.     When determining appropriate discipline, managers are to consider whether an employee's explanation is reasonable, to investigate thoroughly, to consult with an HR consultant, to consider an employee's length of service and past record, and to act consistently with past practice.

34.     Supervisors are also supposed to give employees notice of possible consequences of their actions, to use reasonable rules and find proof of the problem, to have a proper and fair investigation into the problem, to treat employees equitably during the process, to treat other employees equitably for similar problems, to issue fair and reasonable disciplinary action, and ensure that the issue was not attributed solely to the testimony of co-workers.

35.     Defendants also issue disciplinary letters informing employees of the nature of the discipline and the facts leading to the letter.

36.     Defendants define a discharge as a termination for misconduct following a Disciplinary Review Conference. A Disciplinary Review Conference

is a meeting to provide an opportunity for discussion with an employee whose termination at the initiative of the University is contemplated. The conference will include an oral or written statement of the alleged misconduct or performance concerns and allow an opportunity for the employee to respond. The employee is to be informed of the outcome in a timely fashion.

37.    No discharge may occur prior to the approval of the appropriate Human Resources Officer.

38.    Temporary and probationary employees, employees where alternative employment arrangements exist, and those whose employment agreement states that they serve at the pleasure of a particular University officer are not covered by Defendants' Standard Practice Guide.

39.    Employees are afforded the opportunity to file a grievance on matters associated with their employment relationship with Defendants or enter into a dispute resolution process to facilitate resolving misunderstandings and maintain positive work relationships. An allegation that an employee's rights under Defendants' policies have been violated is subject to review under the grievance procedure. Grievances concerning discharge begin at Step 3.

40.    Step 3 goes to the University Grievance Review Committee. The University Grievance Review Committee includes the head of the aggrieved employee's operating unit, or a designated representative, who is responsible for

the answer; an appropriate Director of Human Resources or a designated representative, who will preside and is responsible for conducting the review; and an employee not employed in the vice presidential or vice chancellor area in which the aggrieved employee works, who will be selected by the aggrieved employee from a panel appointed by the Vice Presidents and Vice Chancellors. When unlawful discrimination is alleged, the committee also includes an HR/AA representative of the Office of Institutional Equity.

41.    At the meeting, the employee has an opportunity to present all relevant information to the University Review Committee, but participants should not expect that witnesses will be called, testimony take or, that the proceedings will be recorded electronically.

42.    Plaintiffs were heard by the University Grievance Review Committee. They were not given the opportunity to call witnesses. The panel only included managers and officers for Defendants.

43.    Plaintiffs' employment was not reinstated.

## COUNT I
## DUE PROCESS – 42 U.S.C. § 1983

44.    Plaintiffs incorporate all preceding paragraphs by reference, as if fully alleged herein.

45.    The 14th Amendment of the United States Constitution provides for Plaintiffs' Right to Due Process.

46.     This right is enforceable against Defendants.

47.     Congress created a cause of action for a violation of these rights under 42 U.S.C. § 1983.

48.     Plaintiffs were deprived of their property interest of continued employment with Defendants without Due Process of the law.

49.     Specifically, Plaintiffs were not provided with a neutral decision-maker at their post-termination hearings through the University Grievance Review Committee structure. *See Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 650 (6th Cir. 2013) ("[T]he opportunity for a post-termination evidentiary hearing before a neutral decisionmaker is required for due process.."); *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004) ("Where there is a system of post-termination procedures available to the employee that includes a neutral decisionmaker and/or arbitration, coupled with a pretermination 'right of reply' hearing, then the employee has received all the process due under the Constitution.").

50.     Plaintiffs had a property interest in their continued employment due to Defendants policies providing for "just cause" termination. This is shown through policies requiring progressive discipline, equal treatment, and a dispute resolution process requiring a showing of misconduct. Additionally, other supervisors (and Plaintiffs) were charged with similar allegations in January 2011 regarding alleged overpayment of hours worked. Plaintiffs were not disciplined at all for the incident.

51.     Plaintiffs were deprived in the property interest of continued employment when they were terminated, and their terminations were subsequently upheld by the University Grievance Review Committee.

52.     The lead supervisory person at Plaintiffs' University Grievance Review Committee hearings was Russ Laurin.

53.     Defendants' denial of a neutral decision-maker at the post-termination was a violation of Plaintiffs right to Due Process.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment holding Defendants liable for back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering, harm to reputation, compensatory damages, interest, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## COUNT II
## AGE DISCRIMINATION – ELLIOTT-LARSEN CIVIL RIGHTS ACT

54.     Plaintiffs incorporate all preceding paragraphs by reference, as if fully alleged herein.

55.     At all times relevant hereto, the University of Michigan was Ms. Odom and Mr. Whitlow's "employer" within the definition of the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2201(a) as an entity with one or more employees.

56.     Defendants violated the ELCRA, MCL § 37.2202(a) by refusing to hire, discharging, and otherwise discriminating against Plaintiffs with respect to their employment because of age.

57.     Defendants terminated Plaintiffs' employment after questioning Plaintiffs about their age, when they would retire, and asking why they would want to work for Defendants at their age. Additionally, Defendant stated two months prior to Plaintiffs' termination that it wanted to replace Plaintiffs with a younger worker.

58.     Following their terminations, Defendants did replace Plaintiffs with younger employees.

59.     Additionally, Defendants placed Plaintiffs on a no-rehire list to prevent their future employment with Defendant because of their age.

60.     Any other explanation for Defendants' behavior is mere pretext for discrimination.

61.     Plaintiffs have suffered damages as a result of their termination, including lost wages, lost benefits, and emotional pain and suffering.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter a judgment holding Defendants liable for back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering, harm to

reputation, exemplary damages, interest, costs, attorney fees, and any other such relief that this Court deems just and equitable.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter a judgment holding Defendants liable for back pay, front pay or reinstatement, embarrassment and humiliation, pain and suffering, harm to reputation, exemplary damages, interest, costs, attorney fees, and any other such relief that this Court deems just and equitable.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By:\s\ Richard G. Mack, Jr.
       Richard G. Mack, Jr. (P58657)
       Adam M. Taub (P78334)
       *Attorneys for Plaintiff*
       600 W. Lafayette Blvd., 4th Fl.
       Detroit, MI 48226-0840
Dated: July 28, 2016       (313) 964-4454

14

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JOANNE ODOM** and                                          Case No.
**REGINALD WHITLOW**,                                    Hon.

       Plaintiffs,

v

**UNIVERSITY OF MICHIGAN**,
**UNIVERSITY OF MICHIGAN HEALTH SYSTEM**,
and **RUSS LAURIN**, in his individual and official capacity,

       Defendants.

---

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P58657)
Adam M. Taub (P78334)
*Attorneys for Plaintiff*
600 W. Lafayette Blvd., 4th Fl.
Detroit, MI 48226-0840
(313) 964-4454
richardmack@millercohen.com
adamtaub@millercohen.com

---

## DEMAND FOR TRIAL BY JURY

    **NOW COME** Plaintiffs, **JONANNE ODOM** and **REGINALD WHITLOW**, by their attorneys, **MILLER COHEN, P.L.C.**, and hereby demand for a trial by jury, for all issues so triable.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By:\s\ Richard G. Mack, Jr.
      Richard G. Mack, Jr. (P58657)
      Adam M. Taub (P78334)
      *Attorneys for Plaintiff*
      600 W. Lafayette Blvd., 4th Fl.
      Detroit, MI 48226-0840
Dated: July 28, 2016      (313) 964-4454

2