UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANNE ODOM and
REGINALD WHITLOW,

        Plaintiffs,

v.                                       Civil Case No. 16-12791
                                       Honorable Linda V. Parker

UNIVERSITY OF MICHIGAN,
UNIVERSITY OF MICHIGAN HEALTH
SYSTEM, RUSS LAURIN, and KATHY
JORDAN-SEDGEMAN,

        Defendants.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS (ECF NO. 19) AND (2) GRANTING PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' REPLY BRIEF (ECF NO. 29)

This lawsuit arises from the termination of Plaintiffs' positions with University of Michigan Health System ("UMHS") in July 2013. In an Amended Complaint filed August 1, 2016, Plaintiffs assert: (I) a claim under 42 U.S.C. § 1983 for Defendants' alleged violation of Plaintiffs' Fourteenth Amendment due process right to a neutral decision-maker at their post-termination hearing, and (II) an age discrimination claim under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Presently before the Court is Defendants' "Motion to Dismiss and for Judgment on the Pleadings," filed October 17, 2016. (ECF No. 19.) Plaintiffs

filed a response to the motion on November 7, 2016. (ECF No. 23.) Defendants

filed a reply brief on February 2, 2017, which Plaintiffs move to strike because it

was untimely.[1] (ECF Nos. 28, 29.)

In their motion, Defendants first argue that Eleventh Amendment immunity

bars Plaintiffs' § 1983 claim against the University of Michigan ("UofM"),

UMHS, and the individual defendants to the extent they are sued in their official

capacities for monetary relief. Thus, Defendants seek dismissal of this claim

pursuant to Federal Rule of Civil Procedure 12(b)(1). Next, Defendants cite

Federal Rules of Civil Procedure 12(b)(6), (c), and 56 in support of their request to

dismiss Plaintiffs' § 1983 claim against the individual defendants, to the extent

they are sued in their individual capacities.[2] Specifically, Defendants contend that

the individual defendants are entitled to qualified immunity because Plaintiffs

---

[1] The Court is granting Plaintiffs' motion to strike Defendants' reply brief, as Defendants offer no explanation—much less good cause—for why they filed the brief more than two months beyond its November 21, 2016 due date. *See* Fed. R. Civ. P. 6(b) (granting the court the discretion to extend time "for good cause"). Eastern District of Michigan Local Rule 7.1(e)(1)(C) establishes the following deadline for filing a reply: "within 14 days after service of the response, *but* not less than 3 days before oral argument." (emphasis added). As plainly written, "less than 3 days before oral argument" is not an alternative deadline. Instead, that language means only that the filing deadline is shortened if oral argument is scheduled before the fourteen-day deadline expires.

[2] As Defendants filed an Answer to Plaintiffs' Amended Complaint, their motion technically cannot be brought under Rule 12(b)(6) and, instead must be brought pursuant to Rule 12(c). *See McGlone v. Bell*, 681 F.3d 718, 728 n.2 (citing *Satkowiak v. Bay Cty. Sheriff's Dep't*, 47 F. App'x 376, 377 n.1 (6th Cir. 2002)). As set forth below, however, motions brought under Rules 12(b)(6) and (c) are evaluated using the same standard.

cannot establish a violation of their Fourteenth Amendment rights.[3]  Finally,

Defendants argue that the Court lacks subject matter jurisdiction to adjudicate

Plaintiffs' pendent state-law claim and thus this claim also must be dismissed

pursuant to Rule 12(b)(1).

## I.     Applicable Standards

A motion to dismiss on the ground that sovereign immunity bars the

plaintiff's claims is properly treated as a motion to dismiss for lack of subject

matter jurisdiction under Rule 12(b)(1).  *See Lee Testing & Eng'g, Inc. v. Ohio*

*Dep't of Transp.*, 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012); *see also Nair v.*

*Oakland Cty. Cmty. Health Auth.*, 443 F.3d 474, 476 (6th Cir. 2006).  When a

defendant raises the issue of subject matter jurisdiction, the plaintiff generally

bears the burden of establishing jurisdiction.  *Steel Co. v. Citizens for a Better*

*Env't*, 523 U.S. 83, 104 (1998).  However, " 'the entity asserting Eleventh

Amendment immunity has the burden to show that it is entitled to immunity.' "

*Nair*, 443 F.3d at 474 (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d

958, 963 (6th Cir. 2002)).

---

[3] Plaintiffs argue in their response brief that it is premature for the Court to decide
this constitutional issue because Plaintiffs have not had the opportunity to develop
the factual record and prove that they had a constitutionally recognized property
interest in their jobs to give them the right to due process under the Fourteenth
Amendment.  Plaintiffs do not attach an affidavit or declaration to their response
brief, however, showing that they cannot present facts to oppose the motion.  *See*
Fed. R. Civ. P. 56(d).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A Rule 12(c) motion for judgment on the pleadings is subject to the same standard of review as a Rule 12(b)(6) motion. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive motion brought under Rule 12(b)(6) or (c), a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation

marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II. Factual Background

UofM owns and operates UMHS. (Am. Compl. ¶ 4, ECF No. 4.) Defendant Russ Laurin was employed in UMHS' Human Resources Department at all times relevant to this lawsuit. (*Id*. ¶ 5.) Defendant Kathy Jordan-Sedgeman was employed as the Director of Labor Relations for UMHS during the relevant period. (*Id*. ¶ 6.)

On or about August 9, 2005, Plaintiff Joanne Odom ("Ms. Odom") began working for UMHS as a linen distribution supervisor. (*Id*. ¶ 10; Pls.' Resp. Br., Ex. A ¶ 2, ECF No. 23-2.) Ms. Odom subsequently was transferred to the position of Patient Transportation Supervisor. (Am. Compl. ¶ 10, ECF No. 4.) On or about

January 15, 2008, Plaintiff Reginald Whitlow ("Mr. Whitlow") began working for UMHS as a Multifunctional Material Management Intermediate Supervisor. (*Id.* ¶ 13.) LaKita Pogue supervised Ms. Odom and Mr. Whitlow (collectively "Plaintiffs") during their employment. (*Id.* ¶ 17.)

In an affidavit submitted in response to Defendants' motion, Ms. Odom asserts that when she was hired, she met with Deborah Cobbs, the manager of patient transportation, and Rolando Crooks, the director of the linen department. (Pls.' Resp. Br., Ex. A ¶ 3, ECF No. 23-2.) Ms. Odom attests that during this meeting, Ms. Cobbs "promised me that I can continue working at the University until I voluntarily retired, which would be in 2022." (*Id.* ¶ 4.) Ms. Odom further states that Ms. Cobbs also "promised … that as long as I am following the employment policies and procedures of the University of Michigan, I am guaranteed to keep my job." Ms. Odom claims that Ms. Cobbs was the person responsible for terminating her employment, if necessary, and "[t]hus, she spoke with authority when making the statements." (*Id.*)

Ms. Odom also asserts in her affidavit that supervisors in the patient transportation department trained with human resources at least once a year and "[t]he human resources department trainers would repeatedly say that as long as we follow the UofM employment policies and procedures, we can continue to be employed and be promoted up the employment ladder." (*Id.* ¶ 6.) Ms. Odom

claims that she heard this statement from the time she began working at UofM, until the year she was discharged.  (*Id*.)

On or about July 30, 2013, Plaintiffs learned that there had been an investigation concerning whether they had committed time sheet fraud by falsely reporting hours worked.  (Am. Compl. ¶ 22.)  The investigation concluded that Plaintiffs were not working for numerous hours they reported on their time sheets.  (*Id*. ¶ 23.)  Plaintiffs dispute this finding. Nevertheless, their employment was terminated in late July 2013, and they were placed on a list precluding their employment with any UofM entity.  (*Id*. ¶¶ 29, 31.)

According to Plaintiffs, "Defendants have a policy of treating employees fairly and equitably."  (*Id*. ¶ 32.)  Managers are advised to suspend, discipline, and discharge employees only as needed.  (*Id*.)  Defendants utilize progressive discipline and provide for a Disciplinary Review Committee prior to terminating an employee for misconduct.  (*Id*. ¶¶ 33, 37.)  Defendants afford an employee "the opportunity to file a grievance on matters associated with their employment relationship with Defendants or enter into a dispute resolution process to facilitate resolving misunderstandings and maintain positive work relationships."  (*Id*. ¶ 40.)  Grievances concerning discharge begin at the third and final step of Defendants' disciplinary process.  (*Id*.)

Step 3 goes to the University Grievance Review Committee ("GRC"). (*Id.*

¶ 41.) The GRC includes the following: the head of the aggrieved employee's

operating unit or a designated representative, responsible for the answer; an

appropriate Director of Human Resources or a designated representative, who

presides and is responsible for conducting the review; and an employee not

employed in the vice presidential or vice chancellor area in which the aggrieved

employee works, who is selected by the aggrieved employee from a panel

appointed by the Vice Presidents and Vice Chancellors. (*Id.*) At the hearing

before the GRC, the aggrieved employee may present all relevant information, but

should not expect to call witnesses, take testimony, or have the proceedings

recorded electronically. (*Id.*)

The GRC heard Plaintiffs' grievances concerning their termination. (*Id.*

¶ 43.) Plaintiffs were not given the opportunity to call witnesses. The panel

included only Defendants' managers and officers. (*Id.*) Plaintiffs' employment

was not reinstated following the GRC's review. (*Id.* ¶ 44.)

## III. Applicable Law & Analysis

### A. Eleventh Amendment Immunity

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or
Subjects of any Foreign State.

U.S. Const. amend. XI. Although on its face the Eleventh Amendment prohibits

only suits brought against a state by "Citizens of another State" or "Citizens or

Subjects of any Foreign State," the Supreme Court has long construed the

Amendment to protect states from suits filed by their own citizens in federal court.

*See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Hans v.*

*Louisiana*, 134 U.S. 1 (1980).

Eleventh Amendment immunity extends to states and their agencies. *Puerto*

*Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143 (1993);

*Abick v. State of Mich.*, 803 F.2d 874, 876 (6th Cir. 1986). Defendants assert, and

Plaintiffs do not dispute (Pls.' Resp. Br. at 12 n.4, ECF No. 23 at Pg ID 212), that

UofM (which owns and operates UMHS) is a state agency to which the Eleventh

Amendment applies. *See Estate of Ritter v. Univ. of. Mich.*, 851 F.2d 846, 848 (6th

Cir. 1988). Under the Eleventh Amendment, a state and its agencies are immune

from actions for damages and injunctive relief unless immunity is validly

abrogated by Congress or expressly waived by the state. *See Seminole Tribe of*

*Florida*, 517 U.S. at 54-55; *Thiokol Corp. v. Dep't of Treasury, State of Mich.,*

*Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). Neither Congress nor the State

of Michigan have waived Eleventh Amendment immunity for suits brought under

§ 1983. *See Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985) (citations omitted); *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010).

As such, Plaintiffs' § 1983 claim against UofM and UMHS are subject to dismissal.[4]

Eleventh Amendment immunity also extends to suits against state officials sued for monetary damages based on their conduct in their official capacities because such lawsuits are not suits against the officials themselves but in fact are suits against the office of the officials, i.e. against the state itself. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Plaintiffs do not contest this point, but

---

[4] The dismissal is without prejudice, as the Eleventh Amendment does not bar Plaintiffs from asserting the claim in state court. *See Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005). Notably, with respect to Plaintiffs' § 1983 claim against UofM, UMHS, and the individual defendants in their official capacities, the *only* basis Defendants raise for dismissal is sovereign immunity. In other words, Defendants do not raise sovereign immunity as an "alternative" ground for rejecting Plaintiffs' claim against these defendants. Had Defendants alternatively argued that Plaintiffs' § 1983 claim failed on its merits (as they argue, but only to the extent the claim is asserted against the individual defendants in their individual capacities), the Court may have chosen to ignore their sovereign immunity defense and rule as it does *infra* that Plaintiffs lacked a property interest entitling them to due process protection, which would result in a dismissal with prejudice. *See Nair v. Oakland Cty. Cmty. Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006) (holding that "under any circumstances in which the State (or the United States) declines to raise sovereign immunity as a threshold defense, … the federal courts have discretion to address the sovereign-immunity defense and the merits in whichever order the prefer"). The Court is unaware of precedent suggesting that it has this discretion when the defendant raises sovereign immunity not only as a threshold defense, but as its only defense.

contend that under *Ex Parte Young*, 209 U.S. 123 (1908), the Eleventh
Amendment does not bar this federal court from " 'issu[ing] prospective injunctive
and declaratory relief compelling a state official to comply with federal law.' "
(Pls.' Resp. Br. at 13 (quoting *S&M Brands*, 527 F.3d at 507).)  According to
Plaintiffs, they "request that this Court enjoin Defendants from continuing to
employ practices that violate the Due Process rights of their employees …." (*Id.*)
Yet, Plaintiffs do not seek such relief in their Amended Complaint.[5]

Therefore, the Court also concludes that Plaintiffs' § 1983 claim against the
individual defendants in their official capacities are barred by the Eleventh
Amendment and must be dismissed without prejudice.  Defendants do not contend
that the individual defendants are entitled to Eleventh Amendment immunity to the
extent they are sued in their individual capacities, as they in fact are not.  *See, e.g.,*
*Hardin v. Straub*, 954 F.2d 1193 (6th Cir. 1992) (explaining the difference
between official and individual capacity suits and that a state officer sued in the
latter capacity cannot advance Eleventh Amendment immunity as a defense).

---

[5] For the reasons discussed *infra*, any attempt by Plaintiffs to amend their
complaint to request such relief would be futile.

**B.      Due Process**

Plaintiffs allege that Defendants deprived them of their Fourteenth

Amendment due process right to a post-termination hearing before a neutral

decision-maker.  Defendants argue, however, that Plaintiffs lacked a property

interest in their employment entitling them to due process protection.

"The requirements of procedural due process apply only to the deprivation

of interests encompassed by the Fourteenth Amendment's protection of liberty and

property."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).

Property interests "are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law—rules or

understandings that secure certain benefits and that support claims of entitlement to

those benefits."  *Id.* at 577; *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir.

1989).  "A public employee does not have a property interest in continued

employment when his position is held at the will and pleasure of his superiors and

when he has not been promised that he will only be terminated for good cause."

*Chilingirian*, 882 F.2d at 203.

In Michigan, employment contracts for an indefinite term are presumed to

be at-will and may be terminated by either party at any time for any reason.  *Rood*

*v. Gen. Dynamics Corp.*, 507 N.W.2d 591, 597 (Mich. 1993) (citation omitted); *see*

*also Pucci v. Ninetenth Dist. Court*, 628 F.3d 752, 766 (6th Cir. 2010) (citing *Lytle*

*v. Malady*, 579 N.W.2d 906-910-11 (Mich. 1998) ("Michigan law generally

presumes that employment relationships are 'at-will' arrangements; at-will

employees, in turn, have no property interest in their continued employment.").  A

party may overcome this presumption, however, in one of three ways:

> "(1) proof of a contractual provision for a definite term of
> employment or a provision forbidding discharge absent
> just cause; (2) an express agreement, either written or
> oral, regarding job security that is clear and unequivocal;
> or (3) a contractual provision, implied at law, where an
> employer's policies and procedures instill a legitimate
> expectation of job security in the employee."

*Pucci*, 628 F.3d at 766 (quoting *Lytle*, 579 N.W.2d at 911).

In their Amended Complaint, Plaintiffs rely on Defendants' policy "of

treating employees fairly and equitably" and their progressive disciplinary

procedures to show that employees had "a legitimate expectation of job security[.]"

(Am. Compl. ¶¶ 32-42.)  In response to Defendants' motion, Plaintiffs also rely on

Ms. Odom's affidavit, attesting to statements made to her concerning her future as

an employee.[6]

"In general, a jury can find the existence of a legitimate expectation [of job

security] based on the 'employer's written policy statements set forth in [a] manual

of personnel policies.' "  *Mannix v. Cty. of* Monroe, 348 F.3d 526, 534 (6th Cir.

---

[6] Plaintiffs do not relate any similar statements to Mr. Whitlow.  Thus, his claim to
a property interest in his job appears to depend solely on Defendants' policies and
procedures.

2003) (quoting *Toussaint v. Blue Cross & Blue Shield of Mich.*, 292 N.W.2d 880, 885 (Mich. 1980)).  Nevertheless, the Michigan courts have advised that "the trial court should only allow the case to proceed if the 'policies are reasonably capable of being interpreted as promises of just-cause employment.' " *Id.* (quoting *Rood*, 507 N.W.2d at 606).  " 'Neither the adopting of systematic procedures for dealing with employees nor the creating of disciplinary guidelines transforms an at-will relationship into one prohibiting discharge except for just-cause.' " *Id.* (quoting *Mitchell v. White Castle Sys.*, No. 94-1193, 1996 WL 279863, at *5 (6th Cir. 1996) (unpublished op.)); *see also Biggs v. Hilton Hotel Corp.*, 486 N.W.2d 61, 63 (Mich. Ct. App. 1992) ("The fact that [the] defendant had established a disciplinary system for its employees and, apparently, obligated [the] plaintiff to abide by that disciplinary system in dealing with his subordinates does not establish unequivocally [the] plaintiff's position that he was a just-cause employee rather than an at-will employee.").

As the Michigan Court of Appeals explained in *Briggs*, the fact that an employer creates a disciplinary system for dealing with employees does not justify the employee harboring any legitimate expectation of just-cause employment:

> Certainly, it is not unreasonable to expect that an employer, particularly one such as defendant that employs a large number of individuals, would want a systematic method of dealing with its employees and would provide a consistent set of guidelines under which its managers would deal with subordinates.  This does

> not mean that by doing so an employer establishes just-
> cause employment rather than at-will employment.

486 N.W.2d at 63.  " 'If such documents were sufficient, no employer could ever establish policies informing its employees of reasons why they could be fired without creating a 'just-cause' labor force.' "  *Mannix*, 348 F.3d at 535 (quoting *Mitchell*, 1996 WL 279863, at *5).  Thus, "[p]olicy statements of fairness and a commitment to maintain good will, loyalty, and harmony among employees are not inconsistent with at-will employment and do not objectively support just-cause employment."  *Schultz v. Mem'l Healthcare Ctr.*, No. 230774, 2002 WL 1308635, at * (Mich. Ct. App. June 14, 2002) (citing *Rood*, 507 N.W.2d at 601-02).

The policies on which Plaintiffs rely are insufficient to create an issue of fact under a "legitimate expectations" theory because there is no evidence that Defendants represented that an employee could be discharged only after the procedures had been followed.  *See Bailey v. Dover Elevator Co.*, No. 93-1493, 1994 WL 198194, at *3 (6th Cir. May 19, 1994) (unpublished op.) (citing *Baggs v. Eagle-Picher Indus., Inc.*, 957 F.2d 268, 271-72 (6th Cir. 1992)) (concluding that an employee handbook providing for fair treatment and a progressive discipline system did not create a jury question as to whether the plaintiff could be discharged only for cause because the handbook never expressly stated that employees would be discharged only for cause); *see also Biggs*, 486 N.W.2d at 63. Plaintiffs do not point to anything in Defendants' policies or procedures expressly

representing that employees would be discharged only for cause.  In comparison, the employee manuals in almost all of the cases Plaintiffs cite expressly promised employees that they would be terminated "for just cause only."[7] *Toussaint*, 292 N.W.2d at 884 (explaining that the plaintiff was "handed a manual of Blue Cross personnel policies which … stated … that it was the 'policy' of the company to release employees 'for just cause only.' "); *see also Khalifa v. Henry Ford Hosp.*, 401 N.W.2d 884, 888 (Mich. Ct. App. 1986) (quoting manual stating under "discharge" the policy is "Hospital termination <u>for cause.</u>") (emphasis in manual); *Gleason v. Bd. of Cty. Comm'rs of Weld Cty.*, 620 F. Supp. 632, 634 (D. Colo. 1985) (quoting policy manual provisions defining the plaintiff as a "permanent" employee and providing that, as such, she could only be terminated "for cause"). The Court is not persuaded to reach a different result based on the Illinois state court decision Plaintiffs cite as its ruling has no procedural value.

Oral statements may be sufficient to create a contract for just-cause employment.  *See, e.g., Pucci*, 628 F.3d at 766.  Nevertheless, the Michigan Supreme Court "require[s] such verbal assurances to be clear and unequivocal." *Lytle*, 579 N.W.2d at 171 (citing *Rowe*, 473 N.W.2d at 273).  This requirement is necessary because "individuals often harbor 'optimistic hope of a long

---

[7] Plaintiffs cite the Eighth Circuit's decision in *Skeets v. Johnson*, 805 F.2d 767 (1986); however, the en banc court reversed that decision. 816 F.2d 1213 (8th Cir. 1987).  The en banc court held that the employer's personnel manual did not create a property interest in the plaintiff's employment.  *Id*. at 1215.

relationship' that causes them to misinterpret their employer's oral statements as manifestations of an intention to undertake a commitment in the form of a promise of job security." *Rood*, 507 N.W.2d at 598 (citing *Rowe*, 473 N.W.2d at 273). " '[N]either party to the beginning of an employment relationship expects it to be unsatisfactory, and both hope it will have a significant duration. This hope and noncontractual wish is expressed in terms of language such as 'as long as you do the job.' " *Rowe*, 473 N.W.2d at 273 (quoting *Carpenter v. Am. Excelsior Co.*, 650 F. Supp. 933, 936 n.6 (E.D. Mich. 1987)). Thus, "any orally grounded contractual obligation for permanent employment 'must be based on *more than* an expression of an optimistic hope of a long relationship.' " *Id*. (emphasis added in *Rowe*).

In *Rowe*, the Michigan Supreme Court indicated that "[i]n determining whether a reasonable factfinder can find a promise of job security implied in fact, we look to all the facts and circumstances to evaluate the intent of the parties." 473 N.W.2d at 273. This is an objective evaluation. *Id*. "The starting point in analyzing oral statements for contractual implications is to determine the meaning that reasonable persons might have attached to the language, given the circumstances presented." *Id*. Relevant to the evaluation are whether the statements were made in connection with "preemployment negotiations regarding [job] security" or in response to the plaintiff's "inquiry regarding job security" and whether "the terms were specifically negotiated." *Id*. at 274. An employer's

vague statements or those "couched in general terms, more akin to stating a policy as opposed to offering an express contract" are insufficient to indicate an intent to form a contract for permanent employment. *Id*. at 275.

To establish an oral promise of just-cause employment, Plaintiffs rely on Ms. Cobbs' alleged promise at the time of Ms. Odom's hiring that Ms. Odom could continue working at the University until she voluntarily retired. Plaintiffs also rely on the alleged statements by Ms. Cobbs and unnamed human resources department trainers that as long as employees followed UofM's employment policies and procedures, they were guaranteed to keep their job. Such statements, however, are equivalent to those the Michigan courts have found not reflective of a clear or unequivocal promise of permanent- or just-cause employment, but instead optimistic hopes about the future of the plaintiff's employment that will not suffice to prove just-cause employment. *See, e.g., Rowe*, 473 N.W.2d at 268 (concluding that the statements made to the plaintiff at her initial interview that as long as she sold, she would have a job at Montgomery Ward, did not clearly indicate an intent to form a just-cause employment relationship); *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 795 (Mich. Ct. App. 1993) (holding that statements made during preemployment negotiations with representatives of the employer that the plaintiff would be employed "as long as he was profitable and doing the job," did not give rise to a just-cause claim where the plaintiff did not specifically assert that the

promise was made in response to his articulated concerns that he be terminated for just cause only); *Biggs*, 486 N.W.2d at 63 (finding that the general manager's comments to the plaintiff during preemployment interviews to the effect that he saw the plaintiff as a person who would go places with the corporation and that he felt the relationship would be a good one in which there would be an opportunity for the plaintiff to grow and maintain some type of long-term relationship could not induce the belief that termination would be for just cause only); *Mitchell*, 1996 WL 279863, at *4 (rejecting as a basis for a binding employment contract oral assurances when the plaintiff was hired that "as long as I follow the policy of cash handling and the attendance policy that I would always be assured a job at White Castle.").

In short, Plaintiffs fail to create a genuine issue of material fact to overcome the presumption of at-will employment.  As such, they cannot establish a property interest in their employment with Defendants protected by the Fourteenth Amendment's Due Process Clause.  Therefore, the Court is dismissing with prejudice Plaintiffs' § 1983 due process claim against Ms. Jordan-Sedgeman and Mr. Laurin, to the extent Plaintiffs are suing them in their individual capacities.

## C.    ELCRA

Relying on *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), Defendants argue that the Eleventh Amendment deprives this federal court of jurisdiction to adjudicate Plaintiffs' state-law age discrimination claim. Defendants are correct with respect to Plaintiffs' claim against UofM, UMHS, and the individual defendants to the extent they are sued in their official capacities for money damages, as the Supreme Court held in *Pennhurst* that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." 465 U.S. at 121. Defendants' argument does not apply to Plaintiffs' ELCRA claim against the individual defendants to the extent they are sued in their individual capacities, however. As the Court stated earlier, they are not entitled to Eleventh Amendment immunity in their individual capacities.

Nevertheless, this Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367, and the statute provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). District courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). The court's discretion, however, is circumscribed by considerations of " 'judicial economy, convenience,

fairness, and comity.' " *Id*. (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "After a [Rule] 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Id*. at 1255 (citations omitted) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing state law claims, or remanding them to state court if the action was removed.").

This lawsuit has been pending in this Court for only eight months and is at the earliest stages of litigation. Defendants responded to Plaintiffs' Amended Complaint with their motion to dismiss and, besides this motion, no other substantive documents have been filed. Moreover, to the extent Plaintiffs intend to pursue their § 1983 claim against UofM, UMHS, and the individual defendants in their official capacities, the claim must be filed in state court. Thus, they can pursue their state law claim there, as well. It would be an inefficient use of this Court's resources to adjudicate Plaintiffs' state-law claim here while the parties are litigating Plaintiffs' § 1983 claim in state court. This Court cannot identify any prejudice resulting from the litigation of the state law claim there.

For these reasons, the Court finds that it lacks subject matter jurisdiction over Plaintiffs' ELCRA claim against UofM, UMHS, and the individual defendants in their official capacities. The Court is declining to exercise supplemental jurisdiction over Plaintiffs' ELCRA claim against the individual

defendants in their individual capacities upon its dismissal of Plaintiffs' § 1983 claim.

## IV.    Conclusion

For the reasons set forth above, the Court holds that UofM, UMHS, and the individual defendants to the extent they are sued for monetary damages in their official capacities are entitled to Eleventh Amendment immunity.  The Court therefore is **DISMISSING WITHOUT PREJUDICE** Plaintiffs' § 1983 and ELCRA claims against these defendants.  Plaintiffs did not have a property interest in their employment with Defendants entitling them to due process protection and thus their § 1983 claim against the individual defendants, to the extent they are sued in their individual capacities, fails on the merits and is being **DISMISSED WITH PREJUDICE**.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claim against these defendants and thus the claim is **DISMISSED WITHOUT PREJUDICE**.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to strike Defendants' Reply brief is **GRANTED**

**IT IS FURTHER ORDERED** that Defendants' "Motion to Dismiss and for

Judgment on the Pleadings" is **GRANTED**.

s/ Linda V. Parker     <br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: May 16, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 16, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury      <br>
Case Manager